CITY OF NEW YORK v. PALLADINO et al.

(Supreme Court, Appellate Division, First Department.  November 17, 1911.)

1. MUNICIPAL CORPORATIONS (§ 253*)—CONTRACTS—CONSTRUCTION—RIGHTS OF CONTRACTOR.

The proposal for a contract with the street cleaning department of the city of New York, selling the privilege of appropriating refuse at the city dumps, stated that the agreed compensation was to be paid for the privilege at all the dumps and the incinerators of the department, enumerating 13 dumps and two incinerators, and the contract itself provided that bidders must satisfy themselves by personal examination of the proposed work as to the quantity and nature of the work to be done by the contractor, and the value of the privilege, and should not at any time after submitting a bid assert that there was any misunderstanding in that respect, and that no rebates or refund would be allowed under any circumstances. The defense to an action on a contractor's bond was that the city had breached its contract by reason of the damage by fire to one of the incinerators which deprived the contractor of its use and advantage. *Held*, that the contract estopped the contractor from claiming that there was any breach which authorized abandonment because the incinerator was out of order.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 253.*]

2. MUNICIPAL CORPORATIONS (§ 255*)—CONTRACTS—DUTY ON NONPERFORMANCE —MENACE TO PUBLIC HEALTH.

Where a contract by the street cleaning department of the city of New York, selling the privilege of appropriating the refuse at the city dumps for 32 weeks at a stated price per week, and containing provisions as to advertising and reletting the contract on abandonment, was abandoned after one week's payment, and unsuccessful attempts to relet the contract were made, the department was justified in making an agreement with another contractor, without again inviting proposals, to dispose of the accumulating refuse, which was becoming a public menace, and the original contractor was liable on its bond for performance notwithstanding the failure of the city to let out the privilege on competitive bids.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 255.*]

3. DAMAGES (§ 76*)—LIQUIDATED DAMAGES OR PENALTY.

A bond for $5,000, given by a surety company for the proper performance of a contract with the city of New York for loading and trimming dock scows and other vessels of the department of street cleaning under which the contractor was to pay $1,507.25 per week in advance for 32 weeks for the privilege of sorting and picking over and appropriating certain refuse at the city dumps, provides for a penalty, and not for liquidated damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 154–163; Dec. Dig. § 76.*]

4. APPEAL AND ERROR (§ 1027*)—HARMLESS ERROR—TECHNICAL ERROR—CONSTRUING BOND FOR PENALTY AS LIQUIDATED DAMAGES.

Where a contractor purchased the privilege of sorting and appropriating certain of the refuse at the city dumps for a period of 32 weeks at a weekly payment of $1,500, and the city's loss by reason of the abandonment of the contract deducting all payments and recoveries on bonds was $27,000, the error of the trial court in treating the contractor's bond for $5,000 as one for liquidated damages, instead of for a penalty, was harmless error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4033; Dec. Dig. § 1027.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by the City of New York against the United Surety Company, in which Michael Palladino was impleaded. Judgment for plaintiff, and defendant Palladino appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Wellman, Gooch & Smyth (Herbert C. Smyth, of counsel, and Roderick Wellman, on the brief), for appellant.

Archibald R. Watson, Corp. Counsel (Loyal Leale, of counsel, and Theodore Connoly, on the brief), for respondent.

CLARKE, J. This action was brought on a bond given by the defendant the United Surety Company, for the proper performance by the defendant Palladino of a contract with the city for loading and trimming deck scows and other vessels of the department of street cleaning, under which he was to pay $1,507.25 a week in advance for 32 weeks for the privilege of sorting, picking over, and appropriating certain of the refuse at the city dumps. A prior contract had been given to one Paoli and abandoned. The department of street cleaning readvertised, and Palladino obtained the contract. A suit against Paoli and his surety upon the bond given by them resulted in a judgment for the city which was affirmed by this court and the Court of Appeals. 136 App. Div. 939, 121 N. Y. Supp. 1127; 202 N. Y. 18, 94 N. E. 1077. Palladino paid the amount due for one week in advance and then abandoned the work.

[1] Appellant claims that the plaintiff had breached the contract, and that therefore he had a right to abandon. The proposal, which is a part of the contract, stated as follows:

"The compensation to be paid to the city of New York by the contractor must be stated at a price per week, in advance, for the privilege, and work at all the dumps and the incinerators of the department of street cleaning, in the borough of Manhattan, as enumerated below, viz., East Side dumps; Clinton St., Stanton St., Delancey St., Incinerator, East 29th St., East 46th St., East 61st St., East 60th St., East 107th St., East 139th St., West Side dumps; Canal St., West 30th St., West 47th St., West 47th St., Incinerator, West 134th St."

That is to say, 13 dumps and 2 incinerators.

The breach claimed was that several months before the execution of the contract the Forty-Seventh street incinerator had been damaged by fire, and that thus the city did not give Palladino the opportunity which it had promised him to make money from his refuse sorting and picking enterprise. It is admitted that, while there was a dump at Forty-Seventh street, this incinerator was out of order. It was stipulated on the trial that the disposition of the garbage was largely facilitated by the presence and use of an incinerator, and that on this particular dump the presence of an incinerator would be a financial advantage to the contractor. The city, while admitting the fact and making the said stipulations, claims that the defendant took no advantage by said fact because the clause of the proposal following that enumerating the dumps provided as follows:

"Bidders must satisfy themselves by personal examination of the proposed work and by such other means as they may select as to the quality, quantity and nature of the work to be done by the contractor and the value of the privilege to him, and shall .not at any time after the submission of a bid or estimate assert that there was any misunderstanding in regard to the same, and must take notice that under no circumstances whatever will rebates or refunds be allowed, or any deviation from the terms and conditions of the contract."

I think the provision cited estops the defendant from claiming that there was any breach which authorized abandonment by virtue of the fact that the incinerator was out of order. There was a dump at West Forty-Seventh street, and there were besides 13 other places for him to work at. It would seem that the contract was breached by him, not because of the incinerator being out of order, but because he found he paid too much for the job.

[2] The second claim is that the contract was not advertised and relet as provided in paragraph F. After this second abandonment the commissioner made unsuccessful efforts to find another contractor, but, as the city refuse was accumulating, did not readvertise, but procured contractors by the week to trim and load the scows and gave them the privilege of sorting and picking in order to get the stuff out of the way. Two contractors had abandoned the contract, and the accumulating refuse would become a menace to the public. The authorities were warranted in putting an end to this condition in the way employed. Neither the contract nor the law *required* a further readvertisement.

[3] The third claim is that the trial court erred in holding that the bond sued 'on provided for liquidated damages. It is clear that the said bond provides for a penalty and not for liquidated damages.

[4] Neither side asked to go to the jury, and the question is whether there is enough in the case to establish that the city has suffered damage to the amount of the $5,000 named in the bond, and for which a verdict was directed.

It was shown that the contract was for 32 weeks at the rate of $1,-507.25 a week; that there was but one payment, and that on July 2d.

The street cleaning commissioner testified to his unsuccessful efforts to find another contractor who would pay for the privilege of sorting and picking, and that then he procured one Maroney who did the loading and trimming of the scows which Palladino was required to do under his contract, and that the city lost the difference between the two contracts, namely, the $1,507.25 a week. The defendant put in evidence the judgment roll in the Paoli Case, from which it appeared that the total amount which the city had been able to obtain for the license, privilege, or permit for the picking over of the refuse and appropriating the said materials, from July to February 4, 1909, covering the 32 weeks of this contract, was $14,250, to which should be added Palladino's payment of $1,507.25, making a total of $15,757.25. The total amount payable under the contract for 32 weeks would have been $48,232; subtracting the payments, as aforesaid, would leave an actual loss of $32,474.75. If the Paoli judgment of $5,000 should also be subtracted, there would remain a loss of $27,474.75.

These facts appearing from the judgment roll put in evidence by the defendant, it is quite clear that the error of the court in treating the bond as one for liquidated damages resulted in no harm to the defendant, for the facts were before the court which showed that the damage sustained by the city far exceeded the amount of the penalty named. Under such circumstances, the judgment ought not to be reversed for the technical error complained of.

The judgment and order should be affirmed, with costs to the respondent. All concur.